Filed 5/15/26  P. v. Miles CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JEFFREY LEWIS MILES,<br><br>    Defendant and Appellant. | B339031<br><br>(Los Angeles County<br>Super. Ct. No. YA017891-01) |

    APPEAL from a judgment of the Superior Court of Los Angeles County, Alan Honeycutt, Judge.  Affirmed as modified with directions.

    Debbie Yen, under appointment by the Court of Appeal, for Defendant and Appellant.

    Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Kenneth C. Byrne, Supervising Deputy Attorney General, Allison H. Chung, Deputy Attorney General, for Plaintiff and Respondent.

# INTRODUCTION

In 1994 Jeffrey Lewis Miles pleaded guilty to murder (Pen. Code, § 187, subd. (a))[1] and robbery (§ 211) and admitted allegations he committed the murder while engaged in a robbery (§ 190.2, subd. (a)(17)), personally used a firearm in committing the crimes (§ 12022.5, subd. (a)), suffered a prior serious felony conviction (§ 667, subd. (a)), and served a prior prison term (§ 667.5, former subd. (b)). On his murder conviction the trial court sentenced Miles to life in prison without the possibility of parole, plus determinate terms on the various enhancements. On his robbery conviction the court imposed and stayed execution of the upper term of five years, plus four years for the firearm enhancement.

Thirty years later the Legislature enacted section 1172.75, which invalided most one-year enhancements for a prior prison term. The superior court recalled Miles's sentence under section 1172.75 and resentenced him. On his murder conviction the court sentenced Miles to life without the possibility of parole, plus five years for the firearm enhancement. On his robbery conviction the court imposed and stayed execution of the middle term of three years, plus five years for the firearm enhancement.

Miles argues the court abused its discretion in sentencing him to the (stayed) middle term, instead of the lower term, on his robbery conviction and in declining to strike the firearm

---

[1]     Undesignated statutory references are to the Penal Code.

enhancement under section 12022.5, subdivision (a).[2]  Miles also requests that, in light of legislation that became effective after the superior court resentenced him, we strike the $300 restitution fine under section 1202.4, subdivision (b).  The People ask us to direct the superior court to correct the minute order of the sentencing hearing and the abstract of judgment to conform to the oral pronouncement of judgment.  We conclude that the restitution fine should be stricken and that the abstract of judgment corrected, but that otherwise the judgment should be affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *Miles Pleads Guilty to Murder and Robbery, and the Trial Court Sentences Him*

On November 28, 1993 a clerk at a convenience store called the 911 emergency operator to report he had been robbed and shot by "two black males in their early 20's."  The clerk subsequently died from a single gunshot wound to the chest.  Later that evening, police officers conducted a traffic stop and arrested Miles and another individual for the crimes.

In June 1994 Miles pleaded guilty to murder and robbery and admitted the allegations under section 190.2, subdivision (a)(17), section 12022.5, subdivision (a), section 667, subdivision (a), and section 667.5, former subdivision (b).  The

---

[2]      Miles's opening brief does not state whether he is challenging the firearm enhancement on his murder conviction, his robbery conviction, or both.  We assume he is challenging the firearm enhancement on both convictions.

3

probation officer reported that Miles stated his parents committed him to a psychiatric ward in 1987 as a juvenile and that, in 1992, while "he was just 'standing there,'" he "suffered five gunshot wounds" to his back, side, and stomach. The probation officer also summarized the findings of the detective who investigated the case: "Little insight was obtained during the police investigation as to the reason the defendant shot the victim at the [convenience store]. From all information obtained, it appears that the clerk cooperated with the defendant and gave him his demands."

On his murder conviction the trial court sentenced Miles to life in prison without the possibility of parole, plus five years for the firearm enhancement under section 12022.5, subdivision (a), five years for the serious felony enhancement under section 667, subdivision (a), and one year for the prior prison term enhancement under section 667.5, former subdivision (b). On Miles's robbery conviction the court imposed and stayed execution of a term of five years, plus four years for the firearm enhancement under section 12022.5, subdivision (a).

B. *The Legislature Enacts Ameliorative Legislation That Affects Miles's Sentence, and the Superior Court Recalls His Sentence*

"In 2019, in an effort to reduce the societal and fiscal burdens of incarceration, the Legislature" enacted legislation that amended section 667.5, subdivision (b), "to eliminate prior-prison-term enhancements for all prior crimes except for 'sexually violent offense[s] as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code.' [Citation.] In 2021, [the Legislature] made this change retroactive. It enacted . . .

4

section 1171.1 [citation], later renumbered without substantive change as . . . section 1172.75 . . . [citation], which declares: 'Any sentence enhancement that was imposed prior to January 1, 2020, pursuant to subdivision (b) of Section 667.5, except for any enhancement imposed for a prior conviction for a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code, is legally invalid.'" (*People v. Rhodius* (2025) 17 Cal.5th 1050, 1054; see § 1172.75, subd. (a).)

Section 1172.75 directs the Department of Corrections and Rehabilitation to provide the superior court information on persons currently serving a term for a judgment that includes an enhancement now invalid under section 1172.75, subdivision (a), and prescribes the procedure for the court to review the information from the Department and, if appropriate, "recall the sentence and resentence the defendant." (§ 1172.75, subds. (b) & (c).) In August 2023 the Department identified Miles as a person serving a sentence that includes an enhancement imposed under section 667.5, former subdivision (b).

The superior court set the matter for hearing and appointed counsel to represent Miles. Counsel for Miles filed a petition for resentencing and asserted that Miles "grew up in a household fraught with physical abuse" and that his "experience with violence at home contributed to his lack of impulse control and tendency to act without proper reflection during his youth and early adulthood." Counsel cited studies on adolescent brain development and argued that Miles, who was 22 years old when he committed the crimes in this case, "was not only innately immature due to the young age . . . but was also likely exponentially more immature than his peers who had more supportive upbringings devoid of violence." On his robbery

5

conviction Miles asked the court to sentence him to the lower term of two years, dismiss the prior prison term enhancement under section 667.5, former subdivision (b), and strike the serious felony enhancement under section 667, subdivision (a).  Counsel for Miles submitted three exhibits in support of the petition: (1) a copy of the text of Assembly Bill No. 1540,[3] (2) the abstract of judgment from Miles's original sentencing in 1994, and (3) certificates stating Miles completed various classes and passed the General Education Development examination while incarcerated, along with employment reports stating he had a "positive attitude and calm demeanor."

C.    *The Superior Court Resentences Miles*

At the resentencing hearing in April 2024 the prosecutor objected to the court striking the five-year firearm enhancement on the murder conviction because, the prosecutor explained, the original sentence "was a negotiated disposition."  The court stated it reviewed "the moving papers and all supporting documents submitted by the defense" and acknowledged "its discretion as under the statutes, as well as under the appropriate case law." On the murder conviction the court resentenced Miles to life in prison without the possibility of parole, plus five years for the firearm enhancement.  The court dismissed the one-year prior prison term enhancement under section 667.5, former subdivision (b), and struck the prior serious felony enhancement

---

[3]    Assembly Bill No. 1540 clarified that, "when recalling and resentencing, the court 'shall . . . apply any changes in law that reduce sentences or provide for judicial discretion.'"  (*People v. McMurray* (2022) 76 Cal.App.5th 1035, 1040.)

6

under section 667, subdivision (a). The court stated it recognized "the positive efforts made by Mr. Miles since he's been incarcerated." On the robbery conviction the court stated: "There are no factors in aggravation currently alleged or proven. The court is limited to the [middle] term on count 2." The court imposed and stayed execution of a prison term of three years, plus five years for the firearm enhancement. The court also imposed a $300 restitution fine under section 1202.4, subdivision (b), and $70 in costs.[4] Miles timely appealed.

## DISCUSSION

A. *The Court Did Not Abuse Its Discretion in Sentencing Miles to the Middle Term on His Robbery Conviction*

Miles argues the superior court abused its discretion in not imposing the (stayed) lower term on his robbery conviction because, according to Miles, "there was nothing in the record that showed that the . . . court understood and applied section 1170, subdivision (b)(6) in making its sentencing choices" and his youth at the time he committed the crimes and his childhood trauma

---

[4]     The minute order and abstract of judgment stated the court also imposed a parole revocation fine under section 1202.45 and struck "all financial obligations, excluding any actual victim restitution." Because the court's oral pronouncement of judgment did not include these actions, we will direct the superior court to correct the minute order and abstract of judgment by deleting these terms.

"were contributing factors" to the commission of his offenses. Miles's argument lacks merit.[5]

1.      *Applicable Law and Standard of Review*

"Section 1172.75, subdivision (d) sets forth detailed instructions for resentencing once a sentence has been recalled. . . .  The trial court must 'apply the sentencing rules of the Judicial Council' as well as 'any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing.' [Citation.]  In addition, the court may 'consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant

---

[5]      Contrary to the People's assertion, Miles did not forfeit his argument.  In his petition for resentencing Miles asked the court to resentence him to the lower term; argued his stepfather beat him and his mother, which, according to counsel, contributed to Miles's impulsiveness and tendency to act without thinking "during his youth and early adulthood"; and cited neuroscience research on adolescent brain development.  Though counsel's argument appeared in a section titled "Factors Support Striking the Enhancements," Miles sufficiently preserved his argument. (Cf. *People v. Achane* (2023) 92 Cal.App.5th 1037, 1043 [defendant forfeited his argument under section 1170, subdivision (b)(6), where he "could have asked the trial court at the sentencing hearing . . . to apply the section 1170 amendments retroactively to the . . . upper term sentence, but he did not do so"]; *People v. Tilley* (2023) 92 Cal.App.5th 772, 778 [defendant forfeited his argument the court should have sentenced him to the lower term where he "did not seek the lower term based on section 1170, subdivision (b)(6); object to the imposition of the middle term; or argue that [he] suffered any psychological trauma as a result of mental illness"].)

while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice.'" (*People v. Rhodius*, *supra*, 17 Cal.5th at p. 1055.)

Effective January 1, 2022, section 1170, subdivision (b)(1), "makes the middle term the presumptive sentence for a determinate term of imprisonment." (*People v. Nielsen* (2026) 119 Cal.App.5th 816, 823 (*Nielsen*); see § 1170, subd. (b)(1).) Section 1170, subdivision (b)(6), states, "Notwithstanding paragraph (1), and unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense: [¶] (A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence. [¶] (B) The person is a youth or was a youth as defined under subdivision (b) of Section 1016.7 at the time of the commission of the offense."[6] (See *People v. Salazar* (2023) 15 Cal.5th 416, 419 [section 1170, subdivision (b)(6), "creates a presumption that the sentencing court 'shall' enter a lower term sentence when, among other things, a 'psychological, physical, or childhood trauma' contributed to the offense"]; *Nielsen*, at p. 823 [same]; *People v. Fredrickson* (2023) 90 Cal.App.5th 984, 991 (*Fredrickson*)

---

[6] Section 1016.7, subdivision (b), defines a youth as "any person under 26 years of age on the date the offense was committed."

9

[presumption under section 1170, subdivision (b)(6), "applies only if the defendant's youth was 'a contributing factor' in his or her commission of the offense"].)

"We review a court's sentencing choices for abuse of discretion.  [Citation.]  A defendant is entitled to a sentencing decision made in the exercise of informed discretion, and a court that is unaware of the scope of its discretion cannot exercise informed discretion.  [Citation.]  We presume the court knows and applies the applicable law, absent evidence to the contrary.  [Citations.]  The burden is on the party attacking the sentence to show the court misunderstood its sentencing authority." (*Nielsen*, *supra*, 119 Cal.App.5th at p. 823; see *People v. Knowles* (2024) 105 Cal.App.5th 757, 764-765 (*Knowles*); *Fredrickson*, *supra*, 90 Cal.App.5th at p. 988.)

> 2. *Miles Has Not Shown the Superior Court Failed To Consider Section 1170, Subdivision (b)(6), or Its Presumption*

The record does not show the superior court failed to consider Miles's request the court sentence him to the lower term on his robbery conviction.  (See *Knowles*, *supra*, 105 Cal.App.5th at p. 765 ["'Unless the record affirmatively demonstrates otherwise, the trial court is deemed to have considered all the relevant sentencing factors set forth in the rules.'"].)  Though the court did not discuss section 1170, subdivision (b)(6), Miles has not identified anything in the record suggesting the court misunderstood the law or its discretion.  The court's failure to mention any trauma in Miles's childhood does not mean the court did not consider it.  (See *Knowles*, at pp. 768, 769 [trial court's failure to "mention all of the mitigating evidence," including the

10

defendant's childhood trauma, reflected the court "was not convinced those additional claimed mitigating factors contributed to the assault that ended in [the victim's] death"].)  As discussed, the court stated that it had reviewed the documents Miles submitted, that it understood the applicable laws and its sentencing discretion, and that the petition and exhibits "were very helpful and well-written."  Indeed, Miles states in his opening brief (in the section explaining why he did not forfeit his argument) that his trial counsel "explicitly requested the [lower] term and set forth all the details of [his] childhood trauma" and "presented evidence in support of her argument that [his] youth contributed to him making 'poor and impulsive decisions,'" all of which "'fairly apprised'" the court of the issue.  Counsel's arguments and request the court impose the lower term on Miles's robbery conviction sufficiently alerted the court to consider sentencing him to the lower term based on his youth and childhood trauma.  (See *Nielsen*, *supra*, 119 Cal.App.5th at p. 827 [though the defendant did not expressly argue that section 1170, subdivision (b)(6), applied, his "sentencing materials discussed his childhood trauma and set forth how his childhood trauma led to his crimes such that the trial court was 'on notice' [citation] that [his] childhood trauma may have been a contributing factor to the crimes in this case"].)

Miles also failed to show the presumption under section 1170, subdivision (b)(6), applied to him.  There is no evidence in the record Miles's youth or any childhood trauma contributed to him committing the crimes in this case.  The probation report is the only document in the record that contained any facts about Miles's life before he committed his crimes.  As discussed, that report stated Miles's parents

11

committed him to a psychiatric ward when he was 16 years old, but it did not provide any details about the treatment he received, the duration of his commitment, or the commitment's effect on Miles, including whether the experience contributed to him committing the crimes.  The probation report also recited Miles's statement that, approximately one year before he committed the murder and robbery, he sustained five gunshot wounds.  Again, the report did not provide any further information relevant to the inquiry under section 1170, subdivision (b)(6), namely, whether this experience contributed to Miles's commission of the crimes.

As for the assertion in the petition for resentencing that "Miles grew up in a household fraught with physical abuse," counsel for Miles did not provide a citation to the record or indicate where she obtained that information.  Miles did not submit any evidence of childhood trauma, such as a declaration or a report from a counselor or relative about his upbringing.  The only facts in the record relevant to the analysis under section 1170, subdivision (b)(6), are that Miles was 22 years old when he committed murder and robbery and that he experienced two traumatic events (the psychiatric commitment and the gunshot wounds).

But "the mere fact a defendant is young or has suffered trauma is insufficient—either or both must be 'a contributing factor in the commission of the offense' for the [lower] term presumption to apply."  (*Knowles*, *supra*, 105 Cal.App.5th at p. 765; accord, *People v. Bravo* (2025) 107 Cal.App.5th 1144, 1158; see *People v. Flores* (2022) 73 Cal.App.5th 1032, 1039 [section 1170, subdivision (b)(6), "does not require imposition of the lower term in every case in which the defendant was under

12

age 26 at the time the crime was committed"; it only "establishes a presumption of the lower term if the defendant's youth was 'a contributing factor' in his or her commission of the crime"].) The superior court did not abuse its discretion in impliedly finding the presumption under section 1170, subdivision (b)(6), did not apply. (See *Knowles*, at p. 769 [where the defendant's psychological assessments did not state he "was antisocial or impulsive" or explain "how the impacts of [his] childhood trauma contributed to his planning and execution of the assault on" the victim, "the trial court could have reasonably inferred that [his] mental illness did not contribute to his offense"]; *Fredrickson*, *supra*, 90 Cal.App.5th at p. 994 [record did not show a "clear indication [the] defendant's youth was a contributing factor in the . . . offense"]; cf. *Nielsen*, *supra*, 119 Cal.App.5th at pp. 821-824 [defendant "made a sufficient initial showing to trigger section 1170(b)(6)'s presumption," where he testified about his childhood trauma, a substance abuse specialist's report "detailed [the defendant's] history of substance abuse and trauma," and the probation report "acknowledged that defendant's drug addiction could have contributed to the crime"].)

Citing sources ranging from the United States Department of Justice to a website of the Kansas Judicial Branch, Miles argues that "victims of childhood violence often grow up to be aggressive and commit violence themselves" and that, "[g]iven the amount of violence [he] suffered in childhood, there is substantial evidence that his physical and childhood trauma are a contributing factor to the offenses." These studies, however, were not before the superior court, and we cannot consider them now. (See *Hernandez v. Superior Court* (2025) 115 Cal.App.5th 1120, 1136, fn. 6 ["An appellate court must generally limit its

13

review to matters that are included in the record from the proceedings below and may not consider other matters."]; *People v. Munoz* (2025) 110 Cal.App.5th 499, 508 ["Because [the defendant] did not present these data in the superior court, we cannot evaluate their untested validity and do not consider them."], review granted June 25, 2025, S290828.)

In his reply brief Miles argues he "specifically cited in his petition studies and articles to show how [the] mitigating circumstances are contributing factors to his underlying offenses." This argument, too, lacks merit. Miles does not cite any authority that journal articles or empirical studies constitute evidence that his youth or alleged childhood trauma contributed to his decision to commit crime. Moreover, the findings cited in Miles's petition related to youths or victims of trauma in general, not Miles. None of the studies showed Miles's youth or alleged childhood trauma played any role in the murder or robbery he committed. (See *Fredrickson*, *supra*, 90 Cal.App.5th at p. 993, fn. 7 [though "scientific studies regarding brain development" may suggest it "would be reasonable to presume a defendant's youth is a contributing factor whenever a youth commits a crime," the "Legislature opted to require a finding of causation as to all of the circumstances in section 1170, subdivision (b)(6)"].)

> B.     *The Superior Court Did Not Abuse Its Discretion in Declining To Strike the Firearm Enhancement*

Miles argues the superior court abused its discretion in not exercising its discretion to strike the firearm enhancement under section 12022.5, subdivision (a). According to Miles, "two of the enumerated mitigating circumstances in section 1385 were present: the current offense is connected to prior victimization or

14

childhood trauma, and the enhancement is based on a prior conviction that is over five years old."  Miles argues the court failed to assign "'significant value'" to the mitigating circumstances or find dismissing the enhancement would endanger public safety.  The court, however, did not abuse its discretion.

Section 1385, subdivision (c)(1), "provides that '[n]otwithstanding any other law, the court *shall dismiss an enhancement if it is in the furtherance of justice to do so*, except if dismissal of that enhancement is prohibited by any initiative statute.'" (*People v. Walker* (2024) 16 Cal.5th 1024, 1032.) Section 1385, subdivision (c)(2), "provides that a sentencing court '[i]n exercising its discretion' to dismiss a sentencing enhancement 'shall consider and afford great weight to evidence offered by the defendant to prove' certain enumerated mitigating circumstances, and '[p]roof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety.'" (*Walker*, at p. 1028.)  Section 1385, subdivision (c)(2)(E) and (H), describes the two mitigating circumstances Miles argues apply to him: the "current offense is connected to prior victimization or childhood trauma" and the "enhancement is based on a prior conviction that is over five years old."  Section 1385, subdivision (c)(6)(A) and (B), defines "'[c]hildhood trauma'" and "'[p]rior victimization,'" and provides a court may conclude the defendant's childhood trauma or prior victimization "was connected to the offense if, after reviewing any relevant and credible evidence, including, but not limited to, police reports, preliminary hearing transcripts, witness statements, medical records, or records or reports by

qualified medical experts," the court concludes that the defendant's childhood trauma or prior victimization "substantially contributed to the defendant's involvement in the commission of the offense."

We review the superior court's decision not to strike an enhancement under section 1385, subdivision (c), for abuse of discretion.  (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 298.)  An "'abuse of discretion arises if the trial court based its decision on impermissible factors . . . or on an incorrect legal standard.'" (*People v. Gonzalez* (2024) 103 Cal.App.5th 215, 225.)

The superior court did not abuse its discretion in declining to strike the firearm enhancement.  First, contrary to Miles's assertion, the record does not demonstrate the court failed to conduct the proper analysis under section 1385, subdivision (c)(2).  The court stated it reviewed all the documents and exhibits Miles submitted, which included the petition for resentencing.  Miles argued in his petition he experienced childhood trauma, the prosecutor informed the court that Miles was asking the court to dismiss the firearm enhancement, and the court stated it was declining to strike the enhancement on the murder conviction.  Nothing in the record indicates the court failed to consider Miles's request to dismiss the firearm enhancement or the arguments he made in his petition about his childhood trauma.  That the court did not discuss section 1385, subdivision (c)(2), or Miles's alleged childhood trauma does not mean the court failed to comply with section 1385, subdivision (c)(2).  (See *People v. Bravo, supra*, 107 Cal.App.5th at p. 1157 ["no particular language was required for the trial court to decline to dismiss . . . enhancements"]; *People v. Brugman* (2021) 62 Cal.App.5th 608, 637 ["'The trial court is not

16

required to state reasons for declining to exercise its discretion under section 1385."']; see also *People v. Coleman* (2024) 98 Cal.App.5th 709, 725 ["Defendant's citation to a silent record is insufficient to meet his burden to demonstrate an abuse of discretion."].)

Second, Miles did not present evidence section 1385, subdivision (c)(2), applied to him. As with his argument the court should have sentenced him to the lower term on his robbery conviction, there was no evidence any prior victimization or childhood trauma contributed (much less substantially contributed) to his committing the crimes. Miles did not introduce evidence of childhood trauma (as discussed, counsel for Miles did not state the factual basis of her assertion Miles had been abused as a child, and there is no such evidence in the record). The probation report stated Miles said he sustained five gunshot wounds approximately one year before he committed his crimes, but nothing in the report or anything else in the record indicated the incident played a role in his criminal conduct, and Miles did not mention the incident in the petition for resentencing. (See *People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1095 [court did not err in determining the defendant's illness did not substantially contribute to his involvement in committing the crime because "there was no evidence identifying potentially relevant symptoms of schizophrenia or depression, nor any evidence (or even reasoned argument) linking those symptoms to [the defendant's] commission of the current offense"].)

Finally, Miles mistakenly asserts the mitigating circumstance in section 1385, subdivision (c)(2)(H) (the enhancement is based on a prior conviction that is over five years old) applies to him. Section 1385, subdivision (c)(2)(H), refers to

an enhancement on a "prior conviction." (See *People v. O'Bannon* (2024) 105 Cal.App.5th 974, 982-983 ["the sentencing judge must determine, at the moment of sentencing, whether a prior conviction is five years old" (internal quotation marks omitted)].) The superior court imposed the firearm enhancement on Miles's current convictions for murder and robbery.

C. *The Superior Court Must Vacate the Restitution Fine Under Section 1202.4, Subdivision (b)*

Miles argues the superior court should have vacated his $300 restitution fine under section 1202.4, subdivision (b), because ameliorative legislation enacted after the court resentenced him has rendered his fine "unenforceable." Miles is correct.

1. *Relevant Proceedings*

The abstract of judgment from Miles's original sentencing in 1994 does not indicate whether the trial court imposed a restitution fine.[7] At the 2024 resentencing hearing under section 1172.75, the superior court stated, after imposing the terms of imprisonment on Miles's convictions, "$300 restitution fine."

2. *Applicable Law*

Section 1202.4, subdivision (b), states: "In every case where a person is convicted of a crime, the court shall impose a separate and additional restitution fine, unless it finds compelling and extraordinary reasons for not doing so and states those reasons on the record." (See *People v. Kopp* (2025)

_____

[7] The transcript of that proceeding no longer exists.

19 Cal.5th 1, 13.)  Effective January 1, 2025, the Legislature amended section 1465.9 to add subdivision (d), which states: "Upon the expiration of 10 years after the date of imposition of a restitution fine pursuant to Section 1202.4, the balance, including any collection fees, shall be unenforceable and uncollectible and any portion of a judgment imposing those fines shall be vacated." (See *Kopp*, at p. 17.)

   3.  *The Restitution Fine Is Unenforceable and Uncollectible*

  Though the abstract of judgment from 1994 does not reflect whether the trial court imposed the mandatory minimum restitution fine under section 1202.4, subdivision (b), we presume, as the People argue, the court did.  (See *People v. Ramirez* (2021) 10 Cal.5th 983, 1042 ["we presume that the trial court knew the law and followed it" in imposing a restitution fine under section 1202.4]; *People v. Stowell* (2003) 31 Cal.4th 1107, 1114 ["'a trial court is presumed to have been aware of and followed the applicable law'"]; see also Evid. Code, § 664 ["It is presumed that official duty has been regularly performed."].)  Thus, the superior court's order imposing the restitution fine at Miles's resentencing in 2024 essentially reimposed the fine imposed in 1994, which section 1465.9 has now made unenforceable and uncollectible.

  *People v. Salstrom* (2025) 117 Cal.App.5th 596, review granted, March 11, 2026, S295038, is instructive.  In *Salstrom* the trial court imposed a restitution fine under section 1202.4, subdivision (b), at the defendant's original sentencing; at the resentencing hearing under section 1172.75 many years later, the superior court "'reimpose[d] the fines and fees originally

19

imposed.'" (*Salstrom*, at pp. 598-599.)  The defendant argued on appeal section 1465.9 required the court to vacate the restitution fine.  (*Salstrom*, at p. 599.)  The court in *Salstrom* agreed, rejecting the People's "implicit position" that, when the superior court resentenced him and imposed the restitution fine, "this reimposition restarted section 1465.9's 10-year clock anew."  (*Id.* at p. 600.)  The court in *Salstrom* concluded that the superior court did not impose a new restitution fine at the resentencing, but rather reimposed "the original restitution fine," and that, under section 1465.9, the court's "resentencing judgment reimposing this fine more than 10 years after its original imposition date must be vacated."  (*Salstrom*, at p. 600.)

Like the superior court in *Salstrom*, the superior court here reimposed the original restitution fine mandated by section 1202.4, subdivision (b).  Indeed, the court stated before pronouncing the judgment:  "The court is first going to incorporate all of the proceedings that occurred at the time of sentencing" in June 1994.  Because Miles's restitution fine is more than 10 years old, under section 1465.9, we will vacate it.  (See *People v. Salstrom*, *supra*, 117 Cal.App.5th at p. 601.)

> D.  *The Superior Court Must Correct the Minute Order and the Abstract of Judgment*

After imposing the $300 restitution fine, the superior court stated:  "$300 parole revocation fine, that is stayed pending successful—Well, I am going to strike that.  There is no parole that's going to be granted in this case."  As noted, the minute order and abstract of judgment indicate the court (1) imposed and stayed execution of a parole revocation fine under section 1202.45 and (2) imposed and struck "all financial obligations, excluding

20

any actual victim restitution." The reporter's transcript of the resentencing hearing does not state the court made these rulings.

The superior court must correct the minute order and abstract of judgment to reflect the oral pronouncement of judgment. "Ordinarily, where there is a discrepancy between the oral pronouncement of judgment and the abstract of judgment, the oral pronouncement controls." (*People v. Burke* (2023) 89 Cal.App.5th 237, 244; see *People v. Farell* (2002) 28 Cal.4th 381, 384, fn. 2 ["The record of the oral pronouncement of the court controls over the clerk's minute order."]; *People v. Portillo* (2023) 91 Cal.App.5th 577, 603 ["'the oral pronouncement of sentence controls over a subsequently entered minute order'"].) "Courts may correct clerical errors at any time, and appellate courts . . . have ordered correction of abstracts of judgment that did not accurately reflect the oral judgments of sentencing courts." (*People v. Mitchell* (2001) 26 Cal.4th 181, 185; accord, *People v. Jones* (2012) 54 Cal.4th 1, 89; *People v. Garcia* (2024) 101 Cal.App.5th 848, 859; see *People v. Gobert* (2023) 89 Cal.App.5th 676, 689 ["we must correct the discrepancy by ordering the trial court to modify the minute order"].) Therefore, we direct the superior court to delete from the minute order and abstract of judgment the orders the court did not make at Miles's resentencing.

## DISPOSITION

The judgment is modified to vacate the $300 restitution fine under section 1202.4, subdivision (b). As modified, the judgment is affirmed. The superior court is directed to correct the minute order of the resentencing hearing and the abstract of judgment to accurately reflect the oral pronouncement of

21

judgment and this court's decision vacating the $300 restitution fine under section 1465.9, subdivision (d).  In all other respects, the judgment is affirmed.

SEGAL, Acting P. J.

We concur:

FEUER, J.

STONE, J.